THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8
9
10
11
12
13
14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PROMOTION HOLDINGS GLOBAL INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>TARA PARKER,<br><br>                    Defendant. | CASE NO. C16-1548-JCC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

15
16
17
18
19

    This matter comes before the Court on Defendant Tara Parker's motion for partial summary judgment on the breach of the non-compete clause claim (Dkt. No. 9). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

20

I.    **BACKGROUND**

21
22
23

    The facts surrounding the breach of the non-compete clause claim were discussed in the Court's order denying Plaintiff ProMotion's temporary restraining order. (*See* Dkt. No. 22 at 1–3.) Defendant signed an employment contract that contained the following non-compete clause:

24
25

    **Non-competition:** For a period of 24 months/years after your employment terminates regardless of the reason for termination, you may not work for a

26

1    competitor of ProMotion. At your request or upon your termination, ProMotion
     will provide to you a list of such competitors.[1]

2    (Dkt. No. 25 at 7.) In short, Plaintiff alleges that Defendant breached her non-compete clause by

3    providing trial-consulting services to two of Plaintiff's clients, Carney Badley and McKinley

4    Irvin, after her May 6, 2016, resignation. (Dkt. No. 1 at ¶¶ 2.16, 3.5–3.8.)

5           On May 9, 2016, an attorney at Carney Badley emailed Defendant's ProMotion email

6    address and asked for assistance on an upcoming trial. (Dkt. No. 29 at 3.) ProMotion staff

7    reached out to Defendant and she admitted it would be inappropriate to contact the attorney after

8    her resignation. (Dkt. No. 25 at 14.) However, further ProMotion work emails indicate that

9    Defendant had a lunch meeting with Carney Badley on June 8, 2016. (*Id.* at 17.) When Plaintiff

10   inquired about the meeting, an attorney at Carney Badley replied that the lunch had "nothing to

11   do with trial consulting work. [Carney Badley] loved the trial support [Carney Badley] received

12   from [ProMotion] and would not go to trial without [ProMotion]." (*Id.* at 16.) A Carney Badley

13   attorney, Jeffrey Lavenson, filed a declaration stating that Defendant did not assist Carney

14   Badley with trial-consulting services after her resignation and the lunch was "to talk about her

15   plan for the future." (Dkt. No. 11 at ¶¶ 6, 7.) Defendant herself also filed a declaration stating

16   that she has "not performed any work whatsoever related in any way to Carney Badley" since her

17   resignation. (Dkt. No. 10 at ¶ 5.)

18          On May 10, 2016, attorneys from McKinley Irvin emailed Defendant's ProMotion email

19   address regarding an ongoing project and case on which Defendant had been working on while

20   employed at ProMotion. (Dkt. No. 29 at 5.) When McKinley Irvin was informed that Defendant

21   was unavailable, Plaintiff alleges that the client declined to move forward with Plaintiff's

22   consulting services. (*Id.*) On June 8, 2016, attorneys from McKinley Irvin accidentally sent

23   another email to Defendant's ProMotion email address about the same case that was about to go

24   to trial. (*Id.* at 11.) Defendant states that the second email was in regards to "one small project"

25   _____

26   [1] The Court previously concluded that the provision is enforceable and prohibits Defendant from providing trial-consulting services to ProMotion competitors for two years following the end of her employment. (Dkt. No. 22 at 4.)

1   McKinley Irvin hired her for after her resignation. (Dkt. No. 32 at ¶ 2.) She claims that she

2   "researched legal issues, analyzed the evidence and case law applicable in the situation, and []

3   formulated positions and strategies for admitting or excluding evidence at trial" and that this

4   "legal work was quite different from the limited functions that [she] served as a non-attorney

5   trial consultant" at ProMotion. (*Id.* at   ¶ 3.)

6        Defendant now moves for partial summary judgment on the breach of the non-compete

7   clause claim. (Dkt. No. 9.)

8   **II.    DISCUSSION**

9        **A.    Motion for Summary Judgment Standard**

10       "The court shall grant summary judgment if the movant shows that there is no genuine

11   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

12   Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable

13   inferences to be drawn there from in the light most favorable to the nonmoving party. *Anderson*

14   *v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is

15   properly made and supported, the opposing party "must come forward with 'specific facts

16   showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*

17   *Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that

18   may affect the outcome of the case, and a dispute about a material fact is genuine if there is

19   sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*,

20   477 U.S. at 248–49. Conclusory, non-specific statements in affidavits are not sufficient, and

21   "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871,

22   888–89 (1990). Ultimately, summary judgment is appropriate against a party who "fails to make

23   a showing sufficient to establish the existence of an element essential to that party's case, and on

24   which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317,

25   324 (1986).

26       //

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
PAGE - 3

**B.    Breach of the Non-Compete Clause**

Defendant contends that (1) Plaintiff's non-compete claim fails under the plain language of the offer letter because she would not be working for a "competitor" if she worked for ProMotion clients and (2) the non-compete agreement cannot apply to work she provides as a licensed attorney. (Dkt. No. 9 at 5–7.) First, the Court had already held that Defendant's interpretation of the word "competitor" is baseless. (Dkt. No. 22 at 5.) Defendant herself, working on her own for ProMotion clients, would be a competitor under the terms of the non-compete clause. Second, the Court agrees with Defendant that the non-compete clause cannot restrict her from providing legal services as a licensed Washington attorney. Plaintiff does not dispute this point and agrees that the clause is limited to trial-consulting services. (Dkt. No. 24 at 6.) Therefore, the dispute between the parties is whether Defendant breached the non-compete clause.

Plaintiff argues that Defendant breached the clause by allegedly providing trial-consulting services to two ProMotion clients, Carney Badley and McKinley Irvin. (Dkt. No. 24 at 3–4.) The Court concludes that no reasonable trier of fact could find that Defendant provided trial-consulting services to Carney Badley after her resignation from ProMotion. Both an attorney from Carney Badly and Defendant have stated under the penalty of perjury that Defendant never did any work for Carney Badley after her resignation. (Dkt. No. 10 at ¶ 5; Dkt. No. 20 at ¶ 3.) Carney Badley also stated that they "loved the trial support" they received from ProMotion and "would not go to trial without [ProMotion]." (Dkt. No. 16 at 20.) Taken together, these statements prove that Defendant did not breach the terms of her offer letter with regards to Carney Badly. Moreover, Plaintiff has provided no other evidence that suggests Defendant worked as a competitor for Carney Badly. Therefore, Defendant's motion for partial summary judgment is GRANTED in regards to the Carney Badley non-compete clause allegations.

However, the Court concludes that there is a genuine dispute of material fact whether Defendant provided trial-consulting services to McKinley Irvin after her resignation. A

1  reasonable trier of fact could find that Defendant only provided legal services, not trial-

2  consulting services, to McKinley Irvin based on Defendant's declaration and the email

3  accidentally sent to Defendant's ProMotion email address after her resignation. (*See* Dkt. No. 32

4  at ¶¶ 2–3; Dkt No. 29 at 11.) Defendant claims she only provided attorney legal services, not

5  trial-consulting services. (Dkt. No. 32 at ¶¶ 2–3.) Further, the email itself is vague as to what

6  Defendant was actually doing for McKinley Irvin, and merely summarizes recent case

7  developments. (Dkt. No. 29 at 11.) On the other hand, a reasonable trier of fact could find that

8  Defendant provided trial-consulting services to McKinley Irvin because she provided work, post-

9  resignation, on the same McKinley Irvin case she was working while employed at ProMotion.

10  Moreover, as previously stated, the email is not clear what kind of work Plaintiff provided to

11  McKinley Irvin or if the work was entirely attorney legal services. Therefore, Defendant's

12  motion for partial summary judgment is DENIED in regards to the McKinley Irvin non-compete

13  clause allegations because a genuine dispute of material fact remains.

14  **III.    CONCLUSION**

15        For the foregoing reasons, Defendant's motion for partial summary judgment (Dkt. No.

16  9) is GRANTED in part and DENIED in part.

17        DATED this 15th day of December 2016.

18

19

20

21

22

23  _____

24  John C. Coughenour
    UNITED STATES DISTRICT JUDGE

25

26